John E. and Anne R. KETTLE, James N. and Leah P. Ivy, and Raymond W. and Joan C. Weidemann, Plaintiffs,

v.

UNITED STATES, Defendant.

Nos. 04–683T, 05–1384T, 09–205T.

United States Court of Federal Claims.

April 18, 2012.

Thomas E. Redding, Redding & Associates, P.C., Houston, TX, for the plaintiffs.

Paul Galindo, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for the defendant. With him were David I. Pincus, Chief, Court of Federal Claims Section, John A. DiCicco, Principal Deputy Assistant Attorney General, Tax Division, and Kathryn Keneally, Assistant Attorney General, Tax Division.

## OPINION

HORN, J.

### FINDINGS OF FACT

Between 2004 and 2009, numerous plaintiffs filed separate actions in the United States Court of Federal Claims seeking refunds of income taxes and interest based on related partnership investments. The above captioned cases were among those filed and were consolidated under *Kettle v. United States*, No. 04–683T. The member cases included *Plowman v. United States*, Case No.

05–0695T, *Glass v. United States,* Case No. 05–696T, *Mitchell v. United States,* Case No. 05–1074T, *Brandsted v. United States,* Case No. 05–1315T, *Weidemann v. United States,* Case No. 05–1384T, and *Ivy v. United States,* Case No. 09–205T. *Kettle, Weidemann,* and *Ivy* became known as Group I cases and raised claims concerning statute of limitations, tax motivated interest, and interest abatement. Plaintiffs' interest abatement claims were voluntarily dismissed, based on the United States Supreme Court's decision in *Hinck v. United States,* 550 U.S. 501, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007), in which the Supreme Court ruled that the United States Tax Court has exclusive jurisdiction over 26 U.S.C. § 6404 (2000) interest abatement claims. *Plowman, Glass, Mitchell,* and *Brandsted* became known as Group II cases and revolved around a basis termination claim, all of which now have been voluntarily dismissed. The particular claims addressed in this opinion are the statute of limitations and tax motivated interest claims of *Kettle, Weidemann,* and *Ivy.*

Plaintiffs' claims derive from taxes and penalties assessed by the Internal Revenue Service (IRS) as a result of their investments in various partnerships managed by American Agri–Corp., Inc. (AMCOR). Plaintiffs allege that the IRS made untimely assessments and that tax motivated interest was erroneously applied. Plaintiffs request refunds of taxes, interest, and penalty interest paid, plus attorneys' fees, costs, and any further relief this court deems appropriate.

The *Kettle* litigants requested that their cases be stayed pending resolution of another group of representative cases, including *Isler, et al. v. United States,* Case No. 01–344T, *Scuteri v. United States,* Case No. 01–358T, *Prati et al. v. United States,* Case No. 02–60T, and *Hinck et al. v. United States,* Case No. 03–865T, none of which were assigned to the undersigned judge, because the instant case "presents the same issues of fact and law" as the representative cases. The *Ivy* litigants also requested a stay pending a petition for *certiorari* to the United States Supreme Court in *Keener v. United States,* 551 F.3d 1358, 1367 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.), *cert. denied,* —— U.S. ——,

130 S.Ct. 153, 175 L.Ed.2d 38 (2009), noting that, "[u]nder the Federal Circuit's decision in *Keener v. United States,* 551 F.3d 1358 (Fed.Cir.2009), the Court lacks subject matter jurisdiction over plaintiffs' claims." The *Weidemann* litigants did not file a written motion to stay. The parties agree, however, that the *Weidemann* litigants verbally requested a stay and "understood that their case was suspended" by the court, along with the other cases.

Of the 129 AMCOR-partnership tax refund cases filed by taxpayers in the United States Court of Federal Claims, 77 were identified as factually and legally similar. *See Prati v. United States,* 603 F.3d 1301, 1303 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 940, 178 L.Ed.2d 754 (2011), and *cert. denied sub nom. Deegan et ux. v. United States,* —— U.S. ——, 131 S.Ct. 937, 178 L.Ed.2d 754 (2011). Each plaintiff in the 77 similar cases invested in one or more of the 43 limited partnerships managed by AMCOR, claimed income tax deductions due to their distributive share of partnership losses, had their deductions disallowed by the IRS, and filed suit in the United States Court of Federal Claims for a refund. *See Prati v. United States,* 603 F.3d at 1302. The parties chose *Prati v. United States* as the representative case, which, ultimately, was dismissed by the United States Court of Federal Claims for lack of subject matter jurisdiction. *Id.* at 1303; *Prati v. United States,* 81 Fed.Cl. 422, 440, *recons. denied,* 82 Fed.Cl. 373 (2008), *aff'd,* 603 F.3d 1301 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 940, 178 L.Ed.2d 754 (2011). In *Prati v. United States,* the Court of Federal Claims "relied heavily on the reasoning in" *Keener v. United States,* 76 Fed.Cl. 455 (2007), *aff'd,* 551 F.3d 1358 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.), *cert. denied,* —— U.S. ——, 130 S.Ct. 153, 175 L.Ed.2d 38 (2009), which, based on the same claims in *Prati,* had already been dismissed. *Prati v. United States,* 603 F.3d at 1303–04. On appeal in *Keener* and *Prati,* the United States Court of Appeals for the Federal Circuit affirmed the United States Court of Federal Claims' decisions, ruling that the Court of Federal Claims lacked jurisdiction over the

plaintiffs' tax refund claims based on the statute of limitations and tax motivated interest issues because they were partnership items, which could be adjudicated only at the partnership level, pursuant to 26 U.S.C. § 7422(h) (2006). *See Prati v. United States*, 603 F.3d at 1307–08; *Keener v. United States*, 551 F.3d at 1367. The Supreme Court denied *writs of certiorari* on the issues raised. *Prati et ux. v. United States*, — U.S. ——, 131 S.Ct. 940, 178 L.Ed.2d 754 (2011), and *Deegan et ux. v. United States*, — U.S. ——, 131 S.Ct. 937, 178 L.Ed.2d 754 (2011); *Keener v. United States*, — U.S. ——, 130 S.Ct. 153, 175 L.Ed.2d 38 (2009).

The various partnerships AMCOR managed, including the partnerships in which the above captioned plaintiffs were partners, were designed to create a large loss in the first year of investment, enabling investors to claim significant tax deductions, averaging twice their initial investment, on their individual income tax returns, the losses to be recouped in later years. *See Prati v. United States*, 603 F.3d at 1302. The Weidemanns invested in Travertine Flame Associates, and their case relates to their 1984 income taxes. The Kettles invested in Agri–Venture II, and their case relates to their 1984 and 1985 income taxes. The Ivys invested in Agri–Venture Fund, and their case relates to their 1985 income taxes. Each of the plaintiffs timely filed their individual tax returns, reporting large tax deductions due to the losses sustained by their respective partnerships. Over the course of a number of years, the IRS began investigating the AMCOR partnerships, eventually issuing Final Partnership Administrative Adjustments (FPAAs),

disallowing the investors' reported losses, including those of the plaintiffs. *See id.* The FPAAs asserted numerous reasons for the disallowance, including that certain of the partnerships' transactions were tax motivated transactions, which, when disallowed by the IRS, triggered additional tax motivated penalty interest. *See id.* According to plaintiffs, they received their FPAAs more than three years after filing their tax returns.

In response to the FPAAs, certain representative partners of AMCOR partnerships filed partnership-level suits in United States Tax Court, seeking refunds pursuant to 26 U.S.C. § 6226(b) (1988) in *Agri–Cal Venture Associates v. Commissioner*, T.C. Memo. 2000–271, 2000 WL 1211147 (T.C. Aug. 28, 2000). *See Prati v. United States*, 603 F.3d at 1302. The test cases litigated, among other issues, whether the statute of limitations barred their tax adjustments. *Id.* Each partnership had signed a stipulation to be bound, "in which it agreed that 'the outcome of the statute of limitations issue present in this Partnership Case will be determined in a manner consistent with the [Tax] Court's findings of fact and law on the statute of limitations issue present in the Test Case Group case of *Agri–Venture Fund.*'" *Id.* at 1302–03 (brackets in original). After the Tax Court rejected the limitations argument in *Agri–Cal Venture Associates v. Commissioner*, the IRS moved for decisions in the remaining cases.[1] *Id.* Subsequently, the Tax Court entered stipulated decisions, and the IRS assessed taxes and interest against the non-settling partners, including the Ivys. *Id.*

---

1. The Tax Court considered a statute of limitations defense raised by five petitioners in the seven consolidated cases before the Tax Court, including Agri–Venture Associates, Agri–Venture Fund, Houston Farm Associates II, Dixie Venture–1985 and Texas Farm Venturers. *See Agri–Cal Venture Assocs. v. Comm'r*, T.C. Memo.2000–271, 2000 WL 1211147, at *2 (T.C. Aug. 28, 2000). The Tax Court noted that 26 U.S.C. § 6229(a) provides for a three-year statute of limitations for the assessment of federal income tax attributable to partnership items, and that this period may be extended as to any partner pursuant to section 6229(b)(1)(A)–(B), "by an agreement entered into by respondent and such partner ... [or with] the tax matters partner or ... any other person authorized." *See Agri–Cal*

*Venture Assocs. v. Comm'r*, 2000 WL 1211147, at *2. The Tax Court found that the Agri–Venture Associates and Texas Farm Venturers partnerships for tax year 1984, and the Houston Farm Associates II partnership for tax year 1985, had failed to validly file their tax returns because they either were not signed by any partner or were not signed by a partner with authority to bind the partnership and, therefore, they could not establish that the FPAA was issued before the statute of limitations had expired. *Id.* at *11, *20, *22. The Tax Court also found that as to tax year 1985, the Agri–Venture Associates, Agri–Venture Fund, Dixie Venture–1985, and Texas Farm Venturers partnerships had extended the 3–year limitation period and, therefore, that the FPAA was timely issued. *Id.* at *15–*16, *19.

During the course of the partnership-level proceedings in Tax Court, several partners entered into settlements with the IRS, including the Kettles and the Weidemanns. As a result of the settlements, the IRS assessed taxes and interest against the Kettles and Weidemanns. In the cases currently before this court, the plaintiffs filed refund claims with the IRS, which in the cases of the Kettles and Weidemanns, were disallowed. Subsequently, plaintiffs timely filed suits in this court. The complaint filed by the Ivys indicates that they never received a response to their refund claim from the IRS.

The plaintiffs in *Kettle, Weidemann* and *Ivy* claim that the FPAAs were untimely issued and that penalty interest was erroneously assessed. Pursuant to 26 U.S.C. § 6501(a) (2006), the statute of limitations for applying assessments against taxpayers normally is three years from the date upon which the taxpayers file their tax return. Plaintiffs claim that by the time the IRS issued the FPAAs, the statute of limitations had expired and, therefore, the IRS owes plaintiffs refunds, pursuant to 26 U.S.C. § 6401 (2006).[2] Plaintiffs further assert that, even if the FPAAs were not issued outside of the statute of limitations time period, plaintiffs are not liable for the penalty interest because the partnerships' transactions at issue were not tax motivated transactions, as defined by 26 U.S.C. § 6621(c) (1988) (repealed 1989), and that penalty interest cannot be assessed when an FPAA asserts both tax motivated and non-tax motivated grounds.

Defendant asserts that plaintiffs' claims are factually and legally indistinguishable from the claims in *Keener* and *Prati,* regarding which the United States Court of Appeals for the Federal Circuit held that the United States Court of Federal Claims lacks subject matter jurisdiction. *See Prati v. United States,* 603 F.3d at 1307–08; *Keener v. United States,* 551 F.3d at 1367. According to defendant:

> In *Keener* the plaintiffs—like plaintiffs here—were limited partners in several different AMCOR partnerships. And like plaintiffs here, the *Keener* plaintiffs argued that they were entitled to refunds because the Internal Revenue Service's assessments came after expiration of the statute of limitations, and that, in any case, their underpayments had not been attributable to tax-motivated transactions. This Court held that it did not have jurisdiction to hear plaintiffs' claims. *See Keener,* 76 Fed.Cl. at 466, 469–70 (2007) [sic]. The Federal Circuit affirmed. *Keener,* 551 F.3d at 1362–68 [1362–67]. Section 7422(h) provides that "[n]o action may be brought for a refund *attributable to partnership items.*" The *Keener* court held under § 7422(h) this Court does not have jurisdiction over either of plaintiffs' claims, because both were attributable to partnership items. *Keener,* 551 F.3d at 1362–68 [1362–67]. The *Keener* plaintiffs' partner-level refund suits impermissibly attempted to reexamine items that would affect the partnerships as a whole and therefore all the partners. *See Keener,* 551 F.3d at 1364, 1366. *Prati* raised the same two issues as *Keener* .... This Court dismissed the untimely assessment and tax-motivated interest claims in *Prati* for lack

---

2. The statute at 26 U.S.C. § 6401 states:

   **(a) Assessment and collection after limitation period.**—The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto. **(b) Excessive credits.—(1) in general.**—If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subparts A, B, D, G, H, I, and J of such part IV), the amount of such excess shall be considered an overpayment. **(2) Special rule for credit under section 33.**—For purposes of paragraph (1), any credit allowed under section 33 (relating to withholding of tax on nonresident aliens and on foreign corporations) for any taxable year shall be treated as a credit allowable under subpart C of part IV of subchapter A of chapter 1 only if an election under subsection (g) or (h) of section 6013 is in effect for such taxable year. The preceding sentence shall not apply to any credit so allowed by reason of section 1446. **(c) Rule where no tax liability.**—An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

of jurisdiction. *Prati*, 81 Fed.Cl. at 436, 439, *reconsid. denied* 82 Fed.Cl. 373 (2008). And again, the Federal Circuit affirmed. *Prati/Deegan*, 603 F.3d at 1307–10 [1307–09]. The taxpayers in *Prati/Deegan* alleged they were entitled to refunds because the Internal Revenue Service assessed beyond the limitations period and because § 6621(c) had been improperly applied—the exact claims brought in *Keener* and by the taxpayers here. (footnote omitted; emphasis in original).

Therefore, defendant contends, pursuant to *Keener* and *Prati*, this court must dismiss plaintiffs' claims for lack of subject matter jurisdiction.

Plaintiffs in the above captioned cases contend that, regardless of the Tax Court and federal appellate litigation, the decisions of the United States Court of Appeals for the Federal Circuit in *Keener* and *Prati* are inapplicable to their cases because the plaintiffs' cases are distinguishable from *Keener* and *Prati*, and, therefore, the plaintiffs should be afforded an opportunity to present the unique facts and legal issues of their particular cases to this court. According to the plaintiffs, the litigants in *Keener* made two concessions which plaintiffs here have not made, namely that the FPAAs were conclusive as to the determination that the partnership's activities were tax motivated transactions and that the statute of limitations claims were partnership items. Plaintiffs also contend that, unlike in *Keener* and *Prati*, the grounds provided by the IRS for the penalty interest applied by the FPAAs to the above captioned plaintiffs were separate and independent, and that not all of the listed grounds should be considered tax motivated transactions pursuant to 26 U.S.C. § 6621(c) (1988) or Treasury Regulation § 301.6621–2T (1988).[3] Plaintiffs argue that neither *Keener* nor *Prati* addressed this separability issue

3. The statute at 26 U.S.C. § 6621(c) (1988) states:

**(c) Interest on substantial underpayments attributable to tax motivated transactions (1) In general** In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section. **(2) Substantial underpayment attributable to tax motivated transactions** For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000. **(3) Tax motivated transactions (A) In general** For purposes of this subsection, the term "tax motivated transaction" means—(i) any valuation overstatement (within the meaning of section 6659(c)), (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and (v) any sham or fraudulent transaction.

The relevant portions of Treasury Regulation § 301.6621–2T are:

Q–2. What is a tax motivated underpayment? A–2. A tax motivated underpayment is the portion of a deficiency (as defined in section 6211) of tax imposed by subtitle A (income taxes) that is attributable to any of the following tax motivated transactions: (1) Any instance in which the value of any property, or the adjusted basis of any property, claimed on a return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (i.e., a valuation overstatement within the meaning of section 6659(c)(1)); (2) Any loss disallowed for any period by reason of section 465(a) or any amount included in gross income by reason of section 465(e); (3) Any credit disallowed for any period by reason of section 46(c)(8) or section 48(d)(6); (4) Any loss disallowed for any period with respect to a straddle, as defined in section 1092(c), but without regard to sections 1092(d) and (e); (5) Any use of an accounting method that may result in a substantial distortion of income for any period (see A–3 of this section); and (6) Any deduction disallowed with respect to any other tax motivated transactions (see A–4 of this section).... Q–4. Are any transactions other than those specified in A–2 of this section and those involving the use of accounting methods under circumstances specified in A–3 of this section considered tax motivated transactions under A–2(6) of this section? A–4. Yes. Deductions disallowed under the following provisions are considered to be attributable to tax motivated transactions: (1) Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit, and (2) Any deduction disallowed for any period under section 165(c)(2), relating to any transaction not entered into for profit. Treas. Reg. § 301.6621–2T.

and, therefore, the penalty interest plaintiffs paid should be refunded because the tax adjustments made by the IRS were based on findings other than that they were tax motivated transactions. Plaintiffs also assert that under the doctrine of *res judicata*, plaintiffs were not bound to the partnership-level Tax Court decisions and, therefore, the assessments against them should not be considered "attributable to partnership items," eliminating the jurisdictional bar of 26 U.S.C. § 7422(h). Plaintiffs further contend that because *res judicata* is an issue in their cases, and the United States Court of Appeals for the Federal Circuit did not address *res judicata* in *Keener* or *Prati*, those decisions are not precedential and should not be applied to the above captioned cases.

## DISCUSSION

■ Partnerships are pass-through entities for tax purposes and are not themselves taxable. *See Keener v. United States*, 551 F.3d at 1361 (citing 26 U.S.C. §§ 701–02 (2006) and *Conway v. United States*, 326 F.3d 1268, 1271 (Fed.Cir.), *reh'g denied* (Fed. Cir.2003)). The partners of a partnership are liable on their individual income tax returns for their distributive share of the partnership's gains, losses, credits, deductions, and income. *See Keener v. United States*, 551 F.3d at 1361. To aid in the determination of a partner's tax liability, Congress passed the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 (1982), codified in various sections of the Tax Code. According to the Federal Circuit, " 'TEFRA created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level.' " *Keener v. United States*, 551 F.3d at 1361 (quoting *In re Crowell*, 305 F.3d 474, 478 (6th Cir.2002) and citing *AD Global Fund, LLC ex rel. North Hills Holding, Inc. v. United States*, 481 F.3d 1351, 1355 (Fed.Cir.2007)).

■ Whether an item qualifies as a partnership item is critical to its tax treatment under TEFRA. *See* 26 U.S.C. § 6231(a) (2006). The treatment of partnership items is determined at the partnership level pursu-ant to 26 U.S.C. § 6231(a). The treatment of nonpartnership items is determined at the partner level, not at the partnership level. *See Keener v. United States*, 76 Fed.Cl. at 458 (citing 26 U.S.C. §§ 6211, 6212, 6230(a)(2) and *Crnkovich v. United States*, 202 F.3d 1325, 1328–29 (Fed.Cir.2000) (per curiam)). In addition, there also are hybrid items, defined as "affected item[s]," composed of both partnership and nonpartnership elements. *See* 26 U.S.C. § 6231(a)(5). The Tax Code offers general definitions of partnership, nonpartnership, and affected items at 26 U.S.C. § 6231, as follows:

> **(3) Partnership item.**—The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [of the Tax Code] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.
>
> **(4) Nonpartnership item.**—The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.
>
> **(5) Affected item.**—The term "affected item" means any item to the extent such item is affected by a partnership item.

26 U.S.C. § 6231(a)(3–5). According to Treasury Regulation § 301.6231(a)(3)–1(b) (2012), partnership items "include[ ] ... the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."

The IRS provides FPAAs to individual partners if it decides to determine an adjustment to partnership items on the partnership's tax return. *See Keener v. United States*, 76 Fed.Cl. at 458 (citing 26 U.S.C. § 6223 and *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir.1998)). Among other reasons, an FPAA by the IRS may be issued to disallow reported income tax deductions attributed to tax motivated transactions. Tax motivated transactions also can occasion an increased rate of interest. The court in *Keener* stated:

Between 1984 and 1989, the latter section [of § 6621(c)] provided for an increased rate of interest on substantial underpayments of tax attributable to "tax-motivated transactions." In relevant part, subsection (c)(3) thereof defined "tax motivated transactions" as "any loss disallowed by reason of section 465(a)" and "any sham or fraudulent transaction." 26 U.S.C. § 6621(c)(3)(ii), (v).

*Keener v. United States,* 76 Fed.Cl. at 466 (internal footnote omitted).

The FPAA must be timely submitted to the taxpayer pursuant to 26 U.S.C. § 6229(a) (2006) and 26 U.S.C. § 6501. *See Keener v. United States,* 76 Fed.Cl. at 458. The statute at 26 U.S.C. § 6229(a) states:

**(a) General rule.**—Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A [Income Taxes] with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—

**(1)** the date on which the partnership return for such taxable year was filed, or

**(2)** the last day for filing such return for such year (determined without regard to extensions).

26 U.S.C. § 6229(a).

Similarly, the statute at 26 U.S.C. § 6501(a) imposes a three year time limit:

**(a) General rule.**—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

26 U.S.C. § 6501(a). To extend the period for filing, before the expiration of the filing deadline set in 26 U.S.C. § 6229(a), the partner in question may make an agreement to do so with the Secretary, or the tax matters partner (TMP)[4] may make an agreement with the Secretary on behalf of all partners to the partnership. *See* 26 U.S.C. § 6229(b).

In terms of challenging an FPAA assessment issued by the IRS, 26 U.S.C. § 7422(h) states, "[n]o action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)."[5] If the partner chooses to settle

---

4. "Tax matters partner" is defined at 26 U.S.C. § 6231(a)(7):

> **(7) Tax matters partner.**—The tax matters partner of any partnership is—**(A)** the general partner designated as the tax matters partner as provided in regulations, or **(B)** if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing). If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner. The Secretary shall, within 30 days of selecting a tax matters partner under the preceding sentence, notify all partners required to receive notice under section 6223(a) of the name and address of the person selected.

26 U.S.C. § 6231(a)(7).

5. The statute at 26 U.S.C. § 6228(b) (2006) reads:

> **(1) Notice providing that items become nonpartnership items.**—If the Secretary mails to a partner, under subparagraph (A) of section 6231(b)(1) (relating to items ceasing to be partnership items), a notice that all partnership items of the partner for the partnership taxable year to which a timely request for administrative adjustment under subsection (d) of section 6227 relates shall be treated as nonpartnership items—(A) such request shall be treated as a claim for credit or refund of an overpayment attributable to nonpartnership items, and (B) the partner may bring an action under section 7422 with respect to such claim at any time within 2 years of the mailing of such notice.

26 U.S.C. § 6228(b). The statute at 26 U.S.C. § 6230(c) (2006) provides:

> **(1) In general.**—A partner may file a claim for refund on the grounds that—(A) the Secre-

with the IRS, rather than file a partnership-level action, the taxpayer no longer can participate in the partnership level litigation and is bound to the terms of that settlement. *See Keener v. United States*, 76 Fed.Cl. at 459 (citing 26 U.S.C. §§ 6224(c)(1), 6226(d), 6228(a)(4)(B), and 6231(b)(1)(C)). As a result of a settlement with the IRS, any partnership items are automatically converted to nonpartnership items. *See Keener v. United States*, 76 Fed.Cl. at 459. Once such items are converted, 26 U.S.C. § 7422(h) no longer presents a bar to bringing an action in this court. *See Keener v. United States*, 76 Fed. Cl. at 459 (citing *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir.1995)).[6] It is the jurisdictional bar of 26 U.S.C. § 7422(h) upon which defendant predicates its motion: "Plaintiffs bring the same untimely assessment and tax-motivated interest claims that have been rejected in *Keener, Prati/Deegan*, and by summary affirmance in *Keefe* [*v. United States*, 407 Fed.Appx. 420 (2010) (not selected for publication), *cert. denied*, —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 894

(2011) ]. As the Federal Circuit has repeated [sic] held, such claims impermissibly seek a " 'refund attributable to partnership items.' *See* § 7422(h); *Keener*, 551 F.3d at 1362–67; *Prati/Deegan*, 603 F.3d at 1307–09."

*Jurisdiction*

The United States Supreme Court has stated that: "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States District Court or in the United States Court of Federal Claims." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008) (citing 28 U.S.C. § 1346(a)(1) (2006) and *EC Term of Years Trust v. United States*, 550 U.S. 429, 431, & n. 2, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007)); *see also Schlabach v. United States*, 101 Fed.Cl. 678, 682–83 (2011); *Smith v. United States*, 101 Fed.Cl. 474, 477 (2011), *motion for relief from judgment denied*, 2012 WL 346655 (Fed.Cl. Jan. 31, 2012); *Manor*

tary erroneously computed any computational adjustment necessary—(i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or (ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), (B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or (C) the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. § 6230(c).

**6.** The *Keener* court rejected the argument that the *Keener* plaintiffs' limitations claims had converted into non-partnership items because they, like the Kettles and the Weidemanns, had settled the limitations claim. *See Keener v. United States*, 76 Fed.Cl. at 464–65. In *Keener*, the Court of Federal Claims stated:

To be sure, as in effect during the years in question, section 6231(b)(1)(C) of the Code converted partnership items into nonpartnership items when "the Secretary enters into a

settlement agreement with the partner with respect to such items".... Plaintiffs assert that such a metamorphosis happened here, but with a novel and convenient twist—while they contend that the agreements were sufficient to convert the limitations issue into a nonpartnership item, they assert that the agreements did not resolve the limitations issue, leaving them free to litigate that issue here. If plaintiffs are right, their agreements put them in a truly enviable position—what might be described as "heads we win, tails we win bigger"—that is, if the limitations provision did not bar the assessments here, the agreements limit plaintiffs' tax liability, but if the limitations provision barred the assessments, plaintiffs owe nothing.

*Id.* at 463–64.

The *Keener* court further explained:

Assuming, *arguendo*, that the agreements did not settle the limitations issue *sub judice*, then it would seem to follow that they were ineffective to convert that issue into a nonpartnership item for purposes of section 7422(h). Upon close reading, the language of section 6231(b)(1)(C) plainly applies on an item-by-item basis, as it states that the partnership items of a partner shall become nonpartnership items as of the date the Secretary enters into a settlement agreement with the partner with respect to "such items." The last phrase, of course, would be superfluous if, as plaintiffs intimate, the entry of a settlement agreement as to *any* partnership item converts *every* partnership item into a nonpartnership item.

*Id.* at 464. (emphasis in original).

*Care, Inc. v. United States,* 89 Fed.Cl. 618, 622 (2009) (citing *Flora v. United States,* 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623, *reh'g denied,* 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960), *Shore v. United States,* 9 F.3d 1524, 1527 (Fed.Cir.1993) and 28 U.S.C. § 1346(a)), *aff'd,* 630 F.3d 1377 (Fed.Cir. 2011); *Strategic Hous. Fin. Corp. v. United States,* 86 Fed.Cl. 518, 530 (citing *United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. at 4, 128 S.Ct. 1511), *motion to amend denied,* 87 Fed.Cl. 183 (2009), *aff'd in part, vacated in part on other grounds,* 608 F.3d 1317 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1513, 179 L.Ed.2d 308 (2011); *Buser v. United States,* 85 Fed.Cl. 248, 256 (2009) ("It is 'undisputed' that the Court of Federal Claims possesses the authority to adjudicate tax refund claims.") (citations omitted); *Radioshack Corp. v. United States,* 82 Fed.Cl. 155, 158 (2008) ("This Court has jurisdiction to consider tax refund suits under 28 U.S.C. § 1491(a)(1).") (citations omitted), *aff'd,* 566 F.3d 1358 (Fed.Cir.2009).

The statute at 28 U.S.C. § 1346, cited by the Supreme Court in *Clinton Elkhorn Mining,* provides that:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

28 U.S.C. § 1346(a)(1); *see also Strategic Hous. Fin. Corp. v. United States,* 608 F.3d 1317, 1324 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1513, 179 L.Ed.2d 308 (2011); *Radioshack Corp. v. United States,* 566 F.3d

1358, 1360 (Fed.Cir.2009); *Smith v. United States,* 101 Fed.Cl. at 480 ("It is well established that this Court, and the district courts, lack jurisdiction over a tax refund suit if the full amount of the assessed tax has not been paid at the time the suit is filed." (citations omitted)); *Magma Power Co., MidAmerican Energy Holdings Co. and Subs. v. United States,* 101 Fed.Cl. 562, 566 (2011); *Wasson v. United States,* 100 Fed.Cl. 798, 800 (2011); *Hartman v. United States,* 99 Fed.Cl. 168, 179 (2011); *Manor Care, Inc. v. United States,* 89 Fed.Cl. at 622 ("It is well accepted that this waiver of sovereign immunity extends to claims based upon the unlawful or erroneous assessment of taxes by the United States. These tax refund suits fall within the jurisdiction of the Court of Federal Claims, provided full payment of any assessment is first made by the claimant to the IRS." (citing 28 U.S.C. § 1346(a), *Flora v. United States,* 362 U.S. at 177, 80 S.Ct. 630 and *Shore v. United States,* 9 F.3d at 1527)); *Buser v. United States,* 85 Fed.Cl. at 256 ("It is 'undisputed' that the Court of Federal Claims possesses the authority to adjudicate tax refund claims.") (citations omitted).

For this court to exercise its jurisdiction over a plaintiff's federal tax refund claim, a petitioning party must first satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, which establishes that a claim for refund must be filed with the IRS before filing suit in federal court, and establishes strict deadlines for filing such claims. See 26 U.S.C. §§ 6511, 7422 (2006).[7] In *United States v. Clintwood Elkhorn Mining Co.,* the United States Supreme Court indicated that:

A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer

---

7. The statute at 26 U.S.C. § 7422(a) states:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been exces-

sive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. at 4, 128 S.Ct. 1511 (citations omitted); *see also Radioshack Corp. v. United States*, 566 F.3d at 1360 ("[I]n the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claims's Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."); *United States v. Dalm*, 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548, *reh'g denied*, 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *Buser v. United States*, 85 Fed.Cl. at 256. Moreover, for a refund claim, the court only may hear claims for which the petitioning taxpayer has fulfilled all of his or her tax liabilities for the tax year in question before the refund claim is heard. *See Flora v. United States*, 357 U.S. 63, 72–73, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) (*Flora I*), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (*Flora II*), *reh'g denied*, 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960). In *Flora II*, the United States Supreme Court reiterated that 28 U.S.C. § 1346(a)(1) requires "payment of the full tax before suit...." *Flora II*, 362 U.S. at 150–51, 80 S.Ct. 630; *see also Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir.), *reh'g and reh'g en banc denied*, 467 F.3d 1322 (Fed.Cir.2006), *cert. denied*, 549 U.S. 1338, 127 S.Ct. 2033, 167 L.Ed.2d 762 (2007); *Shore v. United States*, 9 F.3d at 1526 ("The full payment requirement of Section 1346(a)(1) and Flora applies equally to tax refund suits brought in the Court of Federal Claims ....") (citations omitted).

■ Essentially, 26 U.S.C. § 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. *See Chicago Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed.Cir.1994); *see also Gluck v. United States*, 84 Fed.Cl. 609, 613 (2008). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." *Id.* (citing *Chicago Milwaukee Corp. v. United States*, 40 F.3d at 374 (citing *Burlington N.,*

*Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982))). Once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its refund claim. *See Deutsche Bank AG v. United States*, 95 Fed. Cl. 423, 427 n. 3 (2010) (citing *Brown & Williamson, Ltd. v. United States*, 231 Ct.Cl. 413, 688 F.2d 747, 752 (1982)) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds.").

■ Furthermore, as noted above, in order for a tax refund case to be duly filed in a federal court pursuant to 26 U.S.C. § 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511(a):

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.

*Block v. North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Buser v. United States*, 85 Fed.Cl. at 257. The applicable language of Section 6511(a) states:

> Claim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid....

26 U.S.C. § 6511(a); *see also* Treas. Reg. § 301.6511(a)–1 (2012) ("In the case of any tax ...: If a return is filed, a claim for credit

or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later."). As articulated by the United States Supreme Court in *Commissioner v. Lundy*, 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996):

> A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(b)(1) (incorporating by reference 26 U.S.C. § 6511(a)). It also defines two "look-back" periods: If the claim is filed "within 3 years from the time the return was filed," ibid., then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference 26 U.S.C. § 6511(a)). If the claim is not filed within that 3–year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

*Comm'r v. Lundy*, 516 U.S. at 239–40, 116 S.Ct. 647 (footnote omitted); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. at 8, 128 S.Ct. 1511 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."). The Supreme Court in *Lundy* also noted that a timely filing was a prerequi-site for the Court of Federal Claims to have jurisdiction for a refund claim. *See Comm'r v. Lundy*, 516 U.S. at 240, 116 S.Ct. 647 ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, *see* 26 U.S.C. § 7422(a); *Martin v. United States*, 833 F.2d 655, 658–659 (7th Cir.1987), the restrictions governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the look-back period and not the filing deadline from § 6511.").

In sum, Congress has provided strict statutory guidelines laying out the statute of limitations for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

*United States v. Dalm*, 494 U.S. at 602, 110 S.Ct. 1361. In the above captioned cases, plaintiffs meet the pre-requisite for filing tax refund claims in this court.

■ This court is bound by the precedent of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit unless the facts are distinguishable or the Federal Circuit decision has been overturned by the Supreme Court or by federal statute.[8] *See Strickland v. United States*, 423 F.3d 1335, 1338 n. 3 (Fed.Cir.) ("Ordinarily, a trial court may not disregard its reviewing court's precedent. There are two narrow exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." (citing *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied*, 546 U.S. 1031,

---

**8.** The United States Court of Federal Claims is bound by decisions of the United States Court of Claims, the predecessor court to this court and the United States Court of Appeals for the Federal Circuit. *See Banks v. United States*, 102 Fed.Cl. 115, 152 n. 44 (2011) ("When acting in its appellate capacity, the Court of Claims created precedent that is binding on this court.") (citation omitted); *see also South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.Cir.1982).

126 S.Ct. 733, 163 L.Ed.2d 569 (2005) and *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1372 (Fed.Cir.2000)), *reh'g en banc denied* (Fed.Cir.2005); *see also Hall v. Secy. of Dep't of Health and Human Servs.*, 93 Fed.Cl. 239, 247 ("This court may not ignore the binding precedent of the Federal Circuit unless the United States Supreme Court or a federal statute expressly over-rules that precedent." (citing *Strickland v. United States*, 423 F.3d at 1338)), *recons. denied* (2010), *aff'd* 640 F.3d 1351 (Fed.Cir.), *cert. denied sub nom. Hall v. Sebelius*, — U.S. ——, 132 S.Ct. 815, 181 L.Ed.2d 525 (2011)). Even if the court disagrees with the decisions of the Federal Circuit in *Keener* and *Prati*, the court is bound:

> [a]s the Federal Circuit has reminded this court, "the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court."

*Northrop Corp. Emp. Ins. Benefit Plans Master Trust v. United States*, 99 Fed.Cl. 1, 5–6 (2011) (quoting *Crowley v. United States*, 398 F.3d at 1335).

Reviewing the same facts and legal claims as in the cases currently before this court, in *Keener* and *Prati*, the United States Court of Appeals for the Federal Circuit affirmed the decisions of the United States Court of Federal Claims, finding that, under 26 U.S.C. § 7422(h), the Court of Federal Claims lacks jurisdiction to review plaintiffs' statute of limitations and tax motivated interest claims because they are partnership items. *See Prati v. United States*, 603 F.3d at 1307, 1308; *Keener v. United States*, 551 F.3d at 1363–64, 1366. In the cases currently before this court, the facts are indistinguishable from *Keener* and *Prati* and the rulings have not been overturned by the United States Supreme Court or by an overriding federal statute. Therefore, the holdings in the cases decided by the United States Court of Appeals for the Federal Circuit are controlling.

*See Strickland v. United States*, 423 F.3d at 1338 n. 3.

When the *Kettle* plaintiffs in the above captioned cases moved to suspend the proceedings before this court pending resolution of the *Keener* and *Prati* cases, the *Kettle* plaintiffs stated, this case "presents the same issues of fact and law" as *Keener* and *Prati*. The *Ivy* plaintiffs similarly noted in their motion to suspend, "[u]nder the Federal Circuit's decision in *Keener v. United States*, 551 F.3d 1358 (Fed.Cir.2009), the Court lacks subject matter jurisdiction over plaintiffs' claims." In fact, like the plaintiffs here, the plaintiffs in *Keener* and *Prati* were partners in various partnerships managed by AMCOR. *See Prati v. United States*, 603 F.3d at 1302; *Keener v. United States*, 551 F.3d at 1360. Plaintiff Keener was a limited partner in the same partnerships in which the *Kettle* and *Ivy* plaintiffs had invested, Agri–Venture II and AgriVenture Fund, respectively. *See Keener v. United States*, 551 F.3d at 1360 n. 1. Also like the plaintiffs here, the *Keener* and *Prati* plaintiffs, on their individual tax returns, reported deductions resulting from the losses sustained during the first year of their investment in these partnerships to reduce their taxable income. *See Prati v. United States*, 603 F.3d at 1302; *Keener v. United States*, 551 F.3d at 1360. The IRS investigated the AMCOR-managed partnerships, and issued FPAAs to the *Keener* and *Prati* plaintiffs, as the IRS did to the above captioned plaintiffs, disallowing their deductions for several reasons, including a determination that some partnership activities constituted tax motivated, sham transactions. *See Keener v. United States*, 551 F.3d at 1360; *Prati v. United States*, 603 F.3d at 1302.

Subsequently, certain partners filed partnership-level actions with the United States Tax Court as representative cases to rebut the FPAAs, setting forth the same claims as plaintiffs assert in this court. *See Keener v. United States*, 551 F.3d at 1360. Certain of the plaintiffs in *Keener* and *Prati* entered into settlement agreements with the IRS while the Tax Court proceedings were pending. *See Prati v. United States*, 603 F.3d at 1303; *Keener v. United States*, 551 F.3d at

1360. Edward and Joan Deegan chose not to enter into a settlement. *See Prati v. United States*, 603 F.3d at 1303. As a result of the settlement agreements, the IRS assessed taxes, interest, and penalty interest against plaintiff *Keener* and the plaintiffs in *Prati*, as it has against the *Kettle* and *Weidemann* plaintiffs. *See Prati v. United States*, 603 F.3d at 1303; *Keener v. United States*, 551 F.3d at 1360. As with the Ivys, the IRS assessed taxes, interest, and penalty interest against the Deegans following a decision by the Tax Court to enter stipulated decisions. *See Prati v. United States*, 603 F.3d at 1303. The United States Tax Court determined:

> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursement method of accounting; That liabilities in the amount of $13,569,790 lack economic substance; and That the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229.

*Agri–Venture–II, et al. v. Comm'r*, No. 15048–91 (T.C. July 19, 2001); *see also, Agri– Venture Fund v. Comm'r*, No. 15034–91 (T.C. July 19, 2001).

Prior to the Tax Court's entry of judgment, the IRS, in its motion for entry of a decision, "represented that the IRS and the TMPs for the AMCOR partnerships had reached contingent agreements with respect to all the disputed partnership items, and that all partners meeting the interest requirements of I.R.C. § 6226(d) [9] would be deemed parties bound by the entered decisions." *Prati v. United States*, 603 F.3d at 1303. It was as a result of this representation that the Tax Court entered stipulated decisions in the remaining partnership cases. *See Id.*

The *Keener* and *Prati* plaintiffs paid the assessments and, like the plaintiffs currently before the court, filed refund claims with the IRS, but the IRS disallowed the *Keener* and *Prati* plaintiffs' claims. *See Prati v. United States*, 603 F.3d at 1303; *Keener v. United States*, 551 F.3d at 1360 (citing *Keener v. United States*, 76 Fed.Cl. at 457). Thereafter, the *Keener* and *Prati* plaintiffs, as well as the plaintiffs in the above captioned cases, filed suit in the United States Court of Federal Claims seeking refunds, claiming untimely assessments and the inapplicability of tax motivated penalty interest.[10] *See Prati v. United States*, 81 Fed.Cl. at 424; *Keener v. United States*, 76 Fed.Cl. at 457. The United States Court of Federal Claims in *Keener* concluded that it lacked jurisdiction

---

9. The interest requirements described at 26 U.S.C. § 6226(d) (2006) include:

> **(d) Partner must have interest in outcome.—**
> **(1) In order to be party to action.**—Subsection (c) shall not apply to a partner after the day on which—
> **(A)** the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or
> **(B)** the period within which any tax attributable to such partnership items may be assessed against that partner expired.
> Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court

having jurisdiction of such action shall have jurisdiction to consider such assertion.

> **(2) To file petition.**—No partner may file a readjustment petition under subsection (b) unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding.

26 U.S.C. § 6226(d). Prior to the 1997 amendment to 26 U.S.C. § 6226, the statute did not include the second paragraph in subsection (B), "Notwithstanding ... assertion." Thus, prior to 1997, 26 U.S.C. § 6226(d), did, on its face, bar plaintiffs' participation in the Tax Court proceedings.

10. The Pratis also included an interest abatement claim, like the plaintiffs here, which was resolved against plaintiffs by the Supreme Court's opinion in *Hinck v. United States*. *See Prati v. United States*, 81 Fed.Cl. at 440 (citing *Hinck v. United States*, 550 U.S. 501, 127 S.Ct. 2011).

over plaintiffs claims because they were attributable to partnership items.[11]  *See Keener v. United States*, 76 Fed.Cl. at 462 (citations omitted).  Likewise in *Prati*, the trial court determined that any refund resulting from the claim regarding untimely assessment was attributable to partnership items and that any issue regarding penalty interest must be adjudicated at the partnership level.  *See Prati v. United States*, 81 Fed.Cl. at 433, 439 (citations omitted).  On appeal, the United States Court of Appeals for the Federal Circuit affirmed both decisions, finding that the claims in *Keener* and *Prati* were partnership items, precluded by the jurisdictional bar of 26 U.S.C. § 7422(h).  *See Prati v. United States*, 603 F.3d at 1307–08; *Keener v. United States*, 551 F.3d at 1367.  The United States Supreme Court denied *certiorari* in both cases.  *See Keener v. United States*, —— U.S. ——, 130 S.Ct. 153, 175 L.Ed.2d 38, *Prati et ux. v. United States*, 131 S.Ct. 940, and *Deegan et ux. v. United States*, 131 S.Ct. 937.

Despite having earlier requested a stay in the above consolidated cases because, as stated by the above captioned plaintiffs, *Keener* and *Prati* were representative of their claims before this court, plaintiffs now have changed their position and submit that their cases are distinguishable, both factually and legally, from *Keener* and *Prati*.  Plaintiffs now contend that *Keener's* "limitations and § 6621(c) penalty interest holdings are predicated on alleged concessions by those taxpayers.... **There are no such concessions here.**" (emphasis in original).  According to the plaintiffs now before this court, the plaintiffs in *Keener* made the following concessions, which the current plaintiffs have not made: 1) a concession that the partnership's activities constituted tax motivated sham transactions, and 2) a concession that the statute of limitations claims constituted partnership items. (citing *Keener v. United States*, 551

11.  In *Keener v. United States*, 76 Fed.Cl. 455, the United States Court of Federal Claims also considered plaintiffs' argument that, when a partner chooses not to litigate a partnership item at the partnership level, he should not be precluded from doing so later at the partner level.  The court concluded that even if the issue were only part of an affected item, "[i]t is implicit in this structure [of TEFRA] that if the partner chooses not to pursue his rights in the unified partnership proceeding, he may not later challenge the partnership prong of his affected item in a subsequent partner-level proceeding." *Id.* at 461.  Furthermore, whether the limitations issue was a partnership element of an affected item or simply a partnership item, "the result is the same—the court is precluded from considering the statute of limitations issue plaintiffs raise in this partner-level proceeding." *Id.* As the court further explained:

it appears that plaintiffs have waived their limitations objection.  As others of their colleagues apparently did, they could have pursued their statute of limitations defense in the earlier partnership-level proceeding, but, apparently in the interest of obtaining a favorable settlement, chose not to do so.  In such circumstances, the jurisprudence of both the Tax Court and this court suggest that the limitations argument they now raise is not jurisdictional, but rather was an affirmative defense that, by their actions, was waived.

*Id.* at 462 (footnote omitted).

Regarding penalty interest, the court noted that, "the issue whether the transaction, indeed, was a sham must be resolved first in a partnership-level proceeding, before any consideration can be given in a refund action to whether the interest should have been imposed on an individual partner." *Id.* at 469.  Although plaintiffs knew the penalty interest issue was pending at the Tax Court, they chose to settle rather than litigate. *Id.* at 470.  Therefore, the court concluded:

While plaintiffs assert that a ruling that this court lacks jurisdiction to consider their limitations and interest issues would violate due process, the fact of the matter is that plaintiffs "plight"—if that word is appropriate-is a self-inflicted wound.  Plaintiffs had notice, via the FPAA, of the IRS claims and could have continued with the partnership-level proceeding, which would have left them bound by the adverse decision ultimately rendered by the Tax Court.  They chose, however, to settle their cases, only now to contend that they really did not give up anything in exchange for the benefits that the IRS conferred under those agreements and that they instead should be allowed to relitigate issues previously resolved by the Tax Court.  Contrary to their claims, however, the language of the relevant TEFRA provisions, including section 7422(h), precludes this result, requiring partners who intend to contest partnership-level issues to do so in the partnership-level proceeding, rather than in subsequent refund suits.  Unlike plaintiffs' claims, that construction has the added benefit of construing the TEFRA partnership provisions consistent with their purposes.  Plaintiffs have received all the process that is due.

*Id.* (footnote omitted).

F.3d at 1362–63 and *Alpha I, L.P. ex rel. Sands v. United States*, 89 Fed.Cl. 347, 358–59 (2009)). Plaintiffs now assert that the facts of the cases presented to this court are distinguishable from the facts of *Keener* and *Prati* because the United States Court of Appeals for the Federal Circuit concluded in *Keener* and *Prati* that the grounds asserted in the FPAAs for the disallowance were inseparable, whereas, here, plaintiffs declare, the grounds are independent and that several different grounds for disallowance were listed. According to plaintiffs, this inseparability doctrine was explained in *Prati* when the Federal Circuit, quoting *Keener v. United States*, 551 F.3d at 1367, stated, " 'it would be inequitable "to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but *not* to impose penalty interest when that deduction is also disallowed on **other inseparable grounds**," ' " i.e., penalty interest should not be imposed even when the grounds listed for disallowance include both tax motivated and non tax motivated transactions. (quoting *Prati v. United States*, 603 F.3d at 1306 (quoting *Keener v. United States*, 551 F.3d at 1367)) (first emphasis in *Keener*, second emphasis added by plaintiffs).

Despite plaintiffs' current posture, a comparison of the facts in *Keener* and *Prati* to the facts identified in the cases currently before the court demonstrates that the cases are virtually identical. Contrary to plaintiffs' claims, the plaintiffs in *Keener* made neither of the alleged concessions described by plaintiffs: that the partnership's activities were tax motivated and that the statute of limitations claims were partnership items. Indeed, the two concessions to which plaintiffs refer were presented as claims to the *Keener* courts. The opinion in *Keener* states, "[t]axpayers argue that the [limitations] claim cannot be a 'partnership item....' " *Keener v. United States*, 551 F.3d at 1363. (brackets in original). Although the plaintiffs in *Keener* conceded that the statute of limitations issue was defined as a partnership item in Treasury Regulation § 301.6231(a)(3)–1(b), they argued that the regulation was not entitled to deference because it directly contradicted the applicable statute, 26 U.S.C. § 6231(a)(3). *See Keener v. United States*, 551 F.3d at 1362

(citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694, *reh'g denied* 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984), *reh'g denied sub nom. Am. Iron and Steel Inst. v. Natural Res. Def. Council, Inc.*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), and *reh'g denied sub nom. Ruckelshaus v. Natural Res. Def. Council, Inc.*, 468 U.S. 1227, 105 S.Ct. 29, 82 L.Ed.2d 921 (1984)). The plaintiffs in *Keener* contended that while their statute of limitations claim satisfied the second and third prongs of the "partnership item" test in the statute at 26 U.S.C. § 6231(a)(3), it failed the first, rendering it a nonpartnership item. *See Keener v. United States*, 551 F.3d at 1362–63. The *Keener* plaintiffs described the three prongs of the "partnership item" test as including "(1) items found in subtitle A [Income Taxes] that (2) must be taken into account for the partnership's taxable year and (3) are designated as 'more appropriately determined at the partnership level.' " *Id.* at 1362–63. Because the statutory sections designating the appropriate timing for the IRS to submit FPAAs, 26 U.S.C. §§ 6229(a) and 6501, fall under Subtitle F (Procedure and Administration), rather than subtitle A, the *Keener* plaintiffs argued that their claims failed the partnership item test, because their claim was not an "item[ ] found in subtitle A" under the first prong of the "partnership item" test and, therefore, that "the Treasury regulation [§ 301.6231(a)(3)–1(b) ] is invalid to the extent it defines 'partnership item' to include any item outside subtitle A." *Id.* at 1363. While the Federal Circuit ultimately determined that Treasury Regulation § 301.6231(a)(3)–1(b) was entitled to deference because the statute was ambiguous as to whether an item outside Subtitle A could be a partnership item, the plaintiffs in *Keener* argued that their statute of limitations claim was not a partnership item. *See id.* at 1362–63 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843, 104 S.Ct. 2778).

The plaintiffs before this court contend that another distinction between earlier Federal Circuit decisions and their cases is that, in *Keener* " '[e]ach relevant FPAA disallowed

the partnership's deductions because "[t]he partnership's activities constitute[d] a series of sham transactions" ' and the '[t]axpayers **concede[d]** that the FPAAs are conclusive....' " (quoting *Alpha I, L.P., ex rel. Sands v. United States,* 89 Fed.Cl. at 358 (quoting *Keener v. United States,* 551 F.3d at 1367)) (emphasis in original). The United States Court of Appeals for the Federal Circuit in *Keener,* however, stated: "Taxpayers assert that their underpayments of taxes were not attributable to 'tax motivated transactions....' " *Keener v. United States,* 551 F.3d at 1365. While the plaintiffs in *Keener* agreed that the FPAAs were conclusive, one of their two claims in the *Keener* case, identical to plaintiffs' claims here, was that the tax motivated penalties imposed by the FPAAs were inapplicable because the FPAAs listed several reasons for the disallowance, including independent grounds which do not fit the definition of tax motivated transactions. *See id.* at 1367. The *Keener* plaintiffs argued that, given the multiple, separate and independent grounds for the disallowance, including grounds not attributable to tax motivated transactions, the "FPAAs fail to establish that Taxpayers' underpayments were attributable to 'tax motivated transactions.' " *Id.* Therefore, according to plaintiffs, the tax motivated penalties they had paid should be refunded. *Id.* The *Keener* court, however, noted that even if the Court of Federal Claims "had jurisdiction over this argument, we would not be persuaded. The inequitable result of Taxpayers' contention would be to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but *not* to impose penalty interest when that deduction is also disallowable on other inseparable grounds." *Id.* (emphasis in original). From the taxpayers' arguments in *Keener* that the FPAAs were faulty, and the underpayments were not attributable to tax motivated transactions, the plaintiffs here improperly try to infer that the plaintiffs in *Keener* were conceding that the partnerships' transactions were tax motivated. In sum, while the current plaintiffs assert that the holdings in *Keener* and *Prati* were "predicated on alleged concessions by those taxpayers," their assertions are incorrect. The holdings in *Keener* and

*Prati* were predicated on the fact that the plaintiffs' refund claims were attributable to partnership items and the Court of Federal Claims did not have jurisdiction to hear such claims. *See Prati v. United States,* 603 F.3d at 1307–08; *Keener v. United States,* 551 F.3d at 1367.

Similarly, the plaintiffs' argument based on the separability of the FPAAs' grounds for disallowance is equally misdirected. Plaintiffs claim that the Federal Circuit concluded in *Keener* and *Prati* that the determinations of sham transactions were inseparable from the other grounds listed in the FPAAs for the disallowance, and that it is "[o]nly the 'inseparable' conclusion [which] permits a finding that there *was* a determination of 'sham' or a 'determination that the partnership's transactions were tax motivated.' " (emphasis in original). Plaintiffs in the cases currently before the court argue that in contrast to the FPAAs' inseparable grounds listed for the disallowances in *Keener* and *Prati,* the reasons listed in plaintiffs' FPAAs for disallowances are separable. Therefore, according to plaintiffs, a finding of a tax motivated sham transaction is not appropriate in plaintiffs' cases. Nowhere in *Keener* or in *Prati* does the court develop a separability analysis, and plaintiffs do not point to any statement in this regard. Indeed, there is not so much as an implication in *Keener* or *Prati* that their holdings were based on a doctrine of separability. *Keener* only mentions the word "inseparable" in a hypothetical response to an argument by plaintiff. *Keener v. United States,* 551 F.3d at 1367. The *Keener* court stated:

More specifically, Taxpayers' argument appears to be that the relevant FPAAs fail to establish that Taxpayers' underpayments were attributable to "tax motivated transactions" because the FPAAs list multiple, independent grounds for the disallowance—some of which qualify as "tax motivated transactions" and others which do not—making it impossible to determine whether Taxpayers' underpayments were "attributable to" the tax motivated grounds. **Even assuming that the Court of Federal Claims had jurisdiction over this argument, we would not be persuad-**

ed. *See Irom v. Comm'r of Internal Revenue*, 866 F.2d 545, 547–48 (2d Cir.1989) (finding that taxpayer should pay penalty interest for portion of deficiency attributable to a tax motivated transaction even though that deficiency may also be attributable to other factors). The inequitable result of Taxpayers' contention would be to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but *not* to impose penalty interest when that deduction is also disallowable on other inseparable grounds.

*Keener v. United States*, 551 F.3d at 1367 (first emphasis added). *Prati* merely quotes *Keener's* hypothetical, and only in a citation. *See Prati v. United States*, 603 F.3d at 1306 (quoting *Keener v. United States*, 551 F.3d at 1367, in a parenthetical citation, for its proposition that it would be inequitable " 'to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but *not* to impose penalty interest when that deduction is also disallowed on other inseparable grounds' ").

Moreover, as the court noted above, the *Kettle* plaintiffs' Agri–Venture II and the *Ivy* plaintiffs' Agri–Venture Fund partnerships are the same partnerships in which the *Keener* plaintiffs invested. As to the *Weidemann* plaintiffs who invested in the Travertine Flame Associates partnership, plaintiffs concede that "the primary grounds to adjust farming expenses and 'other deductions' in the AV2 [Agri–Venture II] and AVF [Agri–Venture Fund] FPAAs were identical to the TFA [Travertine Flame Associates] FPAA examined by the Fifth Circuit in *Weiner* [*v. United States*, 389 F.3d 152 (5th Cir.2004), *reh'g and reh'g en banc denied*, 130 Fed. Appx. 705 (5th Cir.), *cert. denied*, 544 U.S. 1050, 125 S.Ct. 2312, 161 L.Ed.2d 1091 (2005) ]." As such, the grounds listed in the FPAA's issued to the current plaintiffs are indistinguishable from the grounds listed in the FPAA's issued in *Keener* and *Prati*, wherein the United States Court of Appeals for the Federal Circuit determined that this court lacked jurisdiction because the partnership items could not be litigated in this court pursuant to 26 U.S.C. § 7422(h).

In support of the plaintiffs' argument that the facts here are distinguishable from the facts in *Keener* and *Prati* because the grounds asserted for the disallowances by the IRS were separable, the current plaintiffs refer to a decision issued by the United States Court of Appeals for the Fifth Circuit in *Weiner*. In *Weiner*, the Fifth Circuit considered tax motivated interest and statute of limitations claims, the same claims the plaintiffs raise here. As to the tax motivated interest claims, the Fifth Circuit stated that "when the FPAA lists several *independent* reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is 'attributable to' a reason that also qualifies as a tax-motivated transaction (such as a sham)," because the taxpayers had settled or conceded the disallowances. *Id.* at 162. (emphasis in original). Therefore, the court could not determine whether the underpayments were tax motivated and, thus, penalty interest could not be applied. *Id.*

Plaintiffs argue that the Fifth Circuit in *Weiner* concluded that a 1984 FPAA issued to the Travertine Flame Associates partnership, which was the same partnership in which the *Weidemann* plaintiffs invested, listed independent grounds for disallowance. Plaintiffs contend that the grounds listed in the FPAAs issued to the *Kettle* and *Ivy* plaintiffs were substantively similar to the grounds listed in the FPAA issued to the Travertine Flame Associates partnership. Thus, plaintiffs assert, pursuant to *Weiner*, the grounds listed in their FPAAs were independent and penalty interest should not be applied. Plaintiffs, therefore, urge this court to adopt the reasoning from the Fifth Circuit decision in *Weiner*, although issued by another federal circuit court, not in this circuit, and despite contrary binding precedent issued more recently by the United States Court of Appeals for the Federal Circuit in *Keener* and *Prati*.

The Fifth Circuit decision is not binding on this court. Moreover, the decision is not even applicable to the Ivys, as the Ivys did not concede nor settle their disallowances, and the court in *Weiner* concluded that it

was impossible to determine whether the disallowances were based on sham transactions because the taxpayers had settled with the IRS, precluding such a finding. *See id.* The Fifth Circuit in *Weiner* also ultimately found that the District Courts in the Fifth Circuit lacked jurisdiction over plaintiff's statute of limitations claim. *See id.* at 163.

Furthermore, the *Weiner* decision precedes the Fifth Circuit decision in *Duffie v. United States,* 600 F.3d 362, 383 (5th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010). In *Duffie,* the United States Court of Appeals for the Fifth Circuit adopted the decision of the United States District Court for the Southern District of Texas, holding that, under 26 U.S.C. § 7422(h), it lacked subject matter jurisdiction to hear the plaintiff's sham transaction claim "[b]ecause the nature of a partnership's activities—whether they are sham transactions—is . . . based on the determination of a partnership item." *Duffie v. United States,* 600 F.3d at 383. In forming its decision, *Duffie* referred to *Keener* for its conclusion that "[w]hether a transaction 'was a sham must be resolved first in a partnership-level proceeding, before any consideration can be given in a refund action to whether the interest should have been imposed on the individual partner.'" *Id.* at 376 (quoting *Keener v. United States,* 76 Fed.Cl. at 469).

More recently, in *Rowland v. United States,* No. 7:07–cv–18–18–0, 2011 WL 2516170 (N.D.Tex. June 22, 2011), a case similar to *Keener, Prati* and the above captioned cases, the United States District Court for the Northern District of Texas, a District Court within the Fifth Circuit, issued a slip opinion and determined that "based on *Duffie, Keener,* and *Prati,* the Court finds that Rowland's claims regarding § 6621(c) penalty interest are barred by § 7422(h)." *Rowland v. United States,* 2011 WL 2516170, at *14. The plaintiff in *Rowland,* like the Deegan plaintiffs in *Prati,* and the plaintiffs here, had argued that a finding of "'lack of economic substance'" was not the same as a finding of a "'sham transaction,'" such that the Section 6621(c) penalty interest was improperly assessed. *Id.* (quoting *Prati v. United States,* 603 F.3d at 1309). Like the courts in *Keener* and *Prati,* the *Rowland* court found that plaintiff's penalty interest claims were barred by § 7422(h). *See Rowland v. United States,* 2011 WL 2516170, at *14 (citing *Prati v. United States,* 603 F.3d at 1309).

In short, plaintiffs' arguments in this court that their facts are distinguishable from the facts in *Keener* and *Prati* based on concessions and separability are unpersuasive. Neither the plaintiffs in *Keener,* nor the plaintiffs in *Prati,* made the concessions upon which plaintiffs base their assertion of distinguishing facts. *Keener* and *Prati* were not decided on the basis of concessions. Moreover, plaintiffs' argument on separability is unconvincing. In the above captioned cases, this court is bound by the precedent established by the United States Court of Appeals for the Federal Circuit in *Keener* and *Prati.*

█ Even if *Keener* and *Prati* were not binding, however, plaintiffs' claims would fail because their statute of limitations and tax motivated interest claims are partnership items which cannot be adjudicated at this court pursuant to 26 U.S.C. § 7422(h). Pursuant to 26 U.S.C. § 6231(a)(3), a partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). At issue is whether plaintiff's statute of limitations and tax motivated interest claims can be defined as partnership items pursuant to 26 U.S.C. § 6231(a)(3).

The first step in statutory construction is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)); *see also Jimenez v. Quarterman,* 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); *Strategic*

*Hous. Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d at 1323 ("When interpreting any statute, we look first to the statutory language."). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. at 341, 117 S.Ct. 843 (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992), *cert. denied* 505 U.S. 1218, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992) and *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991)). " 'Beyond the statute's text, the traditional tools of statutory construction include the statute's structure, canons of statutory construction, and legislative history.' " *Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States*, 617 F.3d 1357, 1361 (Fed.Cir.) (quoting *Bull v. United States*, 479 F.3d 1365, 1376 (2007)), *reh'g en banc denied* (Fed.Cir. 2010).

The initial inquiry into the statutory text ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.' " *Barnhart v. Sigmon Coal Co.*, 534 U.S. at 450, 122 S.Ct. 941 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. at 340, 117 S.Ct. 843). In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n. 13, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) ("It is, moreover, ' "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or otherwise insignificant." ' " (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)))); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible). Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. *See Duncan v. Walker*, 533 U.S. at 174, 121 S.Ct. 2120 (noting that courts should not treat statutory terms as "surplusage"). "[W]hen two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *see also Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed.Cir.), *reh'g denied* (Fed.Cir.2000).

When the statute provides a clear answer, the court's analysis is at an end. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. at 450, 122 S.Ct. 941; *see also Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1364 (Fed.Cir. 2011) (" '[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.' " (quoting *Millenium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed.Cir.2009), *reh'g denied* (2009)); *Am. Airlines, Inc. v. United States*, 551 F.3d 1294, 1300 (Fed.Cir.2008), *reh'g granted*, 319 Fed.Appx. 914 (Fed.Cir.2009)). Thus, when the ' "statute's language is plain, "the sole function of the courts is to enforce it according to its terms." ' " *Johnson v. United States*, 529 U.S. 694, 723, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))); *see also Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States*, 617 F.3d at 1361 (citing *Sharp v. United States*, 580 F.3d 1234, 1237 (Fed.Cir.2009), *Jimenez v. Quarterman*, 555 U.S. at 118, 129 S.Ct. 681, and *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

"If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843–44, 104

S.Ct. 2778 (footnote omitted); see also *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004). The Supreme Court also has written that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 129 S.Ct. 2710, 2715, 174 L.Ed.2d 464 (2009) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778) ("Under the familiar *Chevron* framework, we defer to an agency's reasonable interpretation of a statute it is charged with administering."); *Yanco v. United States*, 258 F.3d 1356, 1362 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 885 (2002).

*Chevron* deference requires that a court ask the following questions when reviewing an agency's construction of a statute: First, the court must ask "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 842–43, 104 S.Ct. 2778. If the congressional intent is clear, then the court looks no further, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778 (footnote omitted). However, if Congress is silent, or if it has left the statute "ambiguous with respect to the specific issue," the court must ask the second question: "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778 (footnotes omitted); *see also Judulang v. Holder*, —— U.S. ——, 132 S.Ct. 476, 484 n. 7, 181 L.Ed.2d 449 (2011) ("[U]nder *Chevron* step two, we ask whether an agency interpretation is ' "arbitrary or capricious in substance." ' " (quoting *Mayo Found. for Med. Ed. and Research v. United States*, —— U.S. ——, 131 S.Ct. 704, 711, 178 L.Ed.2d 588 (2011) (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. at 242, 124

S.Ct. 1741))). "[I]f Congress has not specifically addressed the question, a reviewing court must respect the agency's construction of the statute so long as it is permissible. Such deference is justified because '[t]he responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones,' and because of the agency's greater familiarity with the ever-changing facts and circumstances surrounding the subjects regulated." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 866, 104 S.Ct. 2778) (other citations omitted).

■ With respect to an agency's statutory construction: "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question had arisen in a judicial proceeding." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843 n. 11, 104 S.Ct. 2778 (citations omitted). However, "[d]eference does not mean acquiescence." *Presley v. Etowah County Comm'n*, 502 U.S. 491, 508, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778 (citations omitted). Thus, this court should defer to an agency's construction of the statute if it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' express intent." *Rust v. Sullivan*, 500 U.S. 173, 184, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 842–43, 104 S.Ct. 2778). The converse is likewise true; the court should only

defer to the agency's interpretation if it is not in conflict with the congressional intent.

The United States Supreme Court has indicated that regulations issued by the IRS are accorded *Chevron* deference if consistent with the relevant statute. "Treasury Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *Comm'r v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981) (quoting *Comm'r v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, *reh'g denied* (1948)). The Supreme Court elaborated that courts "must defer to Treasury Regulations that 'implement the congressional mandate in some reasonable manner.'" *Comm'r v. Portland Cement Co.*, 450 U.S. at 169, 101 S.Ct. 1037 (quoting *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967)). The Supreme Court noted that "[w]e do this because Congress has delegated to the [Commissioner], not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code," *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (quoting *Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979)), and because the Supreme Court does not "'sit as a committee of revision to perfect the administration of the tax laws.'" *United States v. Cleveland Indians Baseball Co.*, 532 U.S. at 218, 121 S.Ct. 1433 (quoting *United States v. Correll*, 389 U.S. at 306–307, 88 S.Ct. 445); *see also Keener v. United States*, 551 F.3d at 1363 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843, 104 S.Ct. 2778) ("Since the statute is ambiguous with respect to this issue, we give deference to the agency's interpretation of the statute."); *Khan v. United States*, 548 F.3d 549, 554 (7th Cir.

2008) ("We review general authority tax regulations under the criteria articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).").

The Federal Circuit likewise has indicated that: "'Treasury regulations are entitled to great deference, and must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *CUNA Mut. Life Ins. Co. v. United States*, 169 F.3d 737, 742 (Fed.Cir.1999) (quoting *Am. Mut. Life Ins. Co. v. United States*, 43 F.3d 1172, 1176 (8th Cir.1994), *cert. denied*, 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995)); *see also Dow Corning Corp. v. United States*, 984 F.2d 416, 419 (Fed.Cir.1993); *Dillon, Read & Co., Inc. v. United States*, 875 F.2d 293, 299 (Fed.Cir.1989) (citing *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982)) (Treasury Regulations "are to be sustained unless disharmonious with the controlling statute...."). "'Congress has delegated to the Commissioner, not to the courts, the task of prescribing' "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a).'" *Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1314 (Fed.Cir. 1989) (quoting *United States v. Correll*, 389 U.S. at 307, 88 S.Ct. 445 (quoting 26 U.S.C. § 7805(a))); *see also Murfam Farms, LLC v. United States*, 88 Fed.Cl. 516, 522 (2009) ("Section 7805(a) of the Code authorizes the Secretary of the Treasury to promulgate rules and regulations in connection with the enforcement of the Code.") (internal citation omitted), *motion to vacate denied* (2010).

The statute at 26 U.S.C. § 6231(a)(3) is ambiguous and courts have determined that items outside subtitle A can be considered partnership items.[12] Treasury Regulation

---

12. Subtitle A, "Income Taxes," does not encompass 26 U.S.C. §§ 6229(a) or 6501, the statute of limitations statutes at issue in these cases, nor 26 U.S.C. § 6621, the tax motivated interest statute at issue in these cases. The statute of limitations and tax motivated interest statutes in these cases are located at Subtitle F, "Procedure and Administration." *See* 26 U.S.C. Subtitles A (Income Taxes), F (Procedure and Administration). The statute at 26 U.S.C. § 6231(a)(3) provides, in part, that "[t]he term 'partnership item' means,

with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A." However, the "reference [to subtitle A in 26 U.S.C. § 6231(a)(3)] does not, in so many words, prevent a court from treating, as partnership items, legal issues that impact whether the Commissioner's treatment of partnership items arising under subtitle A will be sustained." *Keener v. United States*, 76 Fed.Cl. at 460. The statute at 26 U.S.C. § 6231 is ambiguous in that "the re-

§ 301.6231(a)(3)–1 therefore may be helpful to clarify the meaning of "partnership item" in 26 U.S.C. § 6231(a)(3). The regulation is consistent with the statute, permissive and reasonable. The statute at section 6621(c)(3)(B) provided that "[t]he Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection...." 26 U.S.C. § 6621(c)(3)(B) (1988) (repealed 1989). The regulation explains that partnership items include "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)–1(b).

The statute of limitations and tax motivated interest claims before this court affect the partnership as a whole, not solely individual partners, because the claims affect the propriety of the FPAA disallowance of the deductions stemming from partnership losses. *See Prati v. United States*, 81 Fed.Cl. at 436 ("The resolution of whether the Pratis' assessment was timely would be based on partnership-level determinations that affect other partners's [sic] returns."). Whether an FPAA was issued timely goes to the "legal and factual determinations that underlie the determination of the amount ... and characterization of items of ... deduction." Treas.

Reg. § 301.6231(a)(3)–1(b); *see also Weiner v. United States*, 389 F.3d at 157. If the FPAA now is found to be untimely issued, the partnership losses deducted from the individual partner's income tax returns cannot be disregarded. If plaintiffs now receive a ruling different from that included in the IRS settlements which resulted in the Tax Court's stipulated decisions, the result would be inconsistent tax treatment of partners in the same partnership.

Moreover, allowing plaintiffs to litigate these issues on an individual partner level would "contravene the purposes of TEFRA." *Weiner v. United States*, 389 F.3d at 156–57 (holding that the court lacked jurisdiction under § 7422(h) to hear taxpayers' statute of limitations claim (citing *Chimblo v. Comm'r*, 177 F.3d 119, 125 (2d Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1159, 145 L.Ed.2d 1071 (2000))). TEFRA was created to avoid the duplicative audits of individual partners when the IRS sought to adjust an item on the partner's income tax returns. *See Prati v. United States*, 81 Fed.Cl. at 427. As a result, "TEFRA 'created a single unified procedure for determining the tax treatment of all partnership items as [sic] the partnership level, rather than separately at the partner level.'" *See id.* (quoting *In re Crowell*, 305 F.3d at 478 (citing H.R. Conf. Rep. No. 97–

quirement of *'under any provisions of subtitle A'* [could be read] as modifying not 'any [partnership] item'... but what immediately precedes it in the clause, which is 'the partnership's taxable year.'" *Prati v. United States*, 81 Fed.Cl. at 431–32 (emphasis in original) (quoting 26 U.S.C. § 6231(a)(3) and citing William Strunk Jr. & E.B. White, The Elements of Style 4–5, 59 (4th ed. 1999) (pointing out the rule of grammar that a restrictive clause limits or defines what immediately precedes it and is not set-off by a comma)).

"This makes eminent sense because while subtitle A encompasses substantive rules for a partner's income tax, subtitle A's provisions make clear that this income is derived from the partnership during the partnership's taxable year, as defined by this subtitle." *Prati v. United States*, 81 Fed.Cl. at 431 (citing *River City Ranches # 1 Ltd. v. Comm'r*, 401 F.3d 1136, 1144 (9th Cir. 2005) (recognizing that because Subtitle F provisions administer subtitle A requirements, partnership's tax items affected by Subtitle F provisions are litigated in partnership proceedings, not in the partner's proceedings)). Indeed, mul-

tiple courts have determined that Subtitle F provisions are partnership items. *See Keener v. United States*, 76 Fed.Cl. at 460 (citing *Weiner v. United States*, 389 F.3d at 157, *Slovacek v. United States*, 36 Fed.Cl. 250, 255 (1996), *River City Ranches # 1 Ltd. v. Comm'r*, 401 F.3d at 1144, *Kaplan v. United States*, 133 F.3d 469, 473 (7th Cir.1998), *Clark v. United States*, 68 F.Supp.2d 1333, 1345 (N.D.Ga.1999), *Klein v. United States*, 86 F.Supp.2d 690, 696 (E.D.Mich.1999)); *see also RJT Invs. X v. Comm'r*, 491 F.3d 732, 736–37 (8th Cir.2007); *Prati v. United States*, 81 Fed. Cl. at 433. As the United States Court of Federal Claims in *Prati* points out, "even if one accepts plaintiffs' interpretation, nothing would prevent a court from looking outside subtitle A to effectuate § 6231(a)(3)." *Prati v. United States*, 81 Fed. Cl. at 432 (citing *River City Ranches # 1 Ltd. v. Comm'r*, 401 F.3d at 1144 (holding that the assessment provisions in subtitle F may be considered partnership items); *Clark v. United States*, 68 F.Supp.2d at 1345; *Kaplan v. United States*, 133 F.3d at 473 (subtitle F provisions involving authority of TMP may be considered partnership item); *Klein v. United States*, 86 F.Supp.2d 690, 696 (E.D.Mich.1999)).

760, at 599–600 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1372)).

The court agrees with the *Keener* and *Prati* decisions that plaintiffs' tax motivated interest claim is a partnership item. While courts have used different methods to determine whether a transaction is tax motivated, courts have consistently noted that such "determination must be done on the partnership level." *Prati v. United States*, 81 Fed.Cl. at 438–39 (citations omitted); *see also Sacks v. Comm'r*, 69 F.3d 982, 987 (9th Cir.1995) (transaction in *Sochin v. Commissioner* was a sham because it had no " 'practical economic effects other than the creation of income tax losses' " (quoting *Sochin v. Comm'r*, 843 F.2d 351, 354 (9th Cir.1988) *abrogated on other grounds* by *Keane v. Comm'r*, 865 F.2d 1088, 1092 n. 8 (9th Cir.1989), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988))) (finding that corporation's transactions involving sale-leasebacks, not relevant here, were not shams); *IES Indus. Inc. v. United States*, 253 F.3d 350, 353 (8th Cir. 2001) ("a transaction will be characterized as a sham if 'it is not motivated by any economic purpose outside of tax considerations' (the business purpose test), and if it 'is without economic substance because no real potential for profit exists' (the economic substance test)" (quoting *Shriver v. Comm'r*, 899 F.2d 724, 725–26 (8th Cir.), *reh'g denied*, 899 F.2d 724 (1990))).

Determining whether a partnership entered into a sham transaction involves the consideration of the partnership's motives in making that transaction, " 'not [on] an individual partner's motives for joining the partnership.' " *Keener v. United States*, 76 Fed. Cl. at 468 (quoting *Tallal v. Comm'r*, 778 F.2d 275, 276 (5th Cir.1985)). Furthermore, as the United States Court of Federal Claims in *Keener* pointed out, Treasury Regulation § 301.6231(a)(3)–1 (b), defining partnership items, includes in the definition of partnership items:

> "whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183." The section 183 inquiry identified in the regulation is very similar to the sham transaction analysis that must be conducted in deciding the

partnership prong of the affected item associated with section 6621(c)(3) interest. *See Gilman v. Comm'r of Internal Revenue*, 933 F.2d 143, 147–48 (2d Cir.1991); *Johnson v. United States*, 11 Cl.Ct. 17, 28 (1986); *see also Rose v. Comm'r of Internal Revenue*, 88 T.C. 386, 412–13, 1987 WL 49274 (1987). Accordingly, if the section 183 inquiry is a partnership item, so should [sic] the sham transaction inquiry.

*Keener v. United States*, 76 Fed.Cl. at 469 (quoting Treas. Reg. § 301.6231(a)(3)–1 (b)). Section 183(a) of the Tax Code states, "[i]n the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." 26 U.S.C. § 183(a). Here, the two alternate rules used to determine if a partnership transaction is a sham are whether " 'the taxpayer was motivated by no business purposes other than obtaining tax benefits . . . and that the transaction has no economic substance because no reasonable possibility of a profit exists' " or " 'whether the transaction had any practical economic effects other than the creation of income tax losses.' " *Prati v. United States*, 81 Fed.Cl. at 438 (quoting *Rice's Toyota World Inc. v. Comm'r*, 752 F.2d 89, 91 (4th Cir.1985) and then quoting *Sochin v. Comm'r*, 843 F.2d at 354). In each instance the question revolves around whether the actions are related to some economic business purpose of the partnership.

Whether a partnership transaction was tax motivated relates to the "determinations that underlie the determination of the . . . characterization of items of . . . deduction[.]" Treas. Reg. § 301.6231(a)(3)–1(b). Even if the imposition of interest resulting from such a determination were an affected item, plaintiffs "only challenge a partnership-level component of this affected item (namely, the nature of the partnerships' transactions), without advancing any argument regarding partner-level components . . . ." *Keener v. United States*, 551 F.3d at 1366 (footnote omitted). As partnership items, plaintiffs' claims only could be brought in a partnership-level case, not in the instant proceed-

ings. *See* 26 U.S.C. § 6221 (2006). Under 26 U.S.C. § 7422(h), this court does not have jurisdiction over partnership items, even if the partners before the court chose not to litigate the partnership items in the partnership-level cases.

*Res Judicata*

Plaintiffs also argue that the *res judicata* issue they raised must be addressed first and that *Keener* and *Prati* are not controlling because there have been "changes in the law" since the decisions in *Keener* and *Prati* were issued and *res judicata* does not apply to their cases. Plaintiffs cite to the Fifth Circuit decision, *Duffie v. United States*, 600 F.3d 362, for the proposition that a *res judicata* analysis must be conducted before a jurisdictional analysis is commenced, and that under the doctrine of *res judicata*, 26 U.S.C. § 7244(h) does not bar this proceeding because plaintiffs are not bound in this court by decisions issued by the United States Tax Court. Plaintiffs also point to the United States Supreme Court's opinions in *Henderson ex rel. Henderson v. Shinseki*, —— U.S. ——, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) and *United States v. Tohono O'Odham Nation*, —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011), and the Federal Circuit's opinion in *Jade Trading, LLC v. United States*, 598 F.3d 1372 (Fed.Cir.2010), as impacting elements of the *res judicata* analysis. *Duffie* and *Jade*, however, were issued in March 2010, prior the Federal Circuit's opinion in *Prati*, which was issued in May 2010, and, therefore, *Duffie* and *Jade* do not constitute intervening law.

In *Duffie*, the United States Court of Appeals for the Fifth Circuit granted the government's cross-motion for summary judgment and denied plaintiff's motion for summary judgment on the grounds of *res judicata* and lack of subject matter jurisdiction. *Duffie v. United States*, 600 F.3d at 386–87. The court in *Duffie*, however, did not announce or even suggest a rule that *res judicata* must be determined before a court reviews jurisdiction, although the opinion discusses the issue first. *See Duffie v. United States*, 600 F.3d at 382. The *Duffie* court may have done so simply because the government presented *res judi-*

*cata* as the first issue in its appellate brief. *See* Brief for Appellee *Duffie v. United States*, 2009 WL 6698024, at *25, *41 (5th Cir.2009).

Additionally, *Henderson ex rel. Henderson v. Shinseki* and *United States v. Tohono O'Odham Nation* are not helpful to resolve the instant case. The issue in *Henderson* was whether the statutory period for filing an appeal to the United States Court of Veterans Appeals was jurisdictional. *See Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. at 1200. According to the plaintiffs, in *Henderson*, the United States Supreme Court articulated four factors to determine whether a procedural provision is jurisdictional or whether it may be ignored for equitable reasons. *Henderson* concerned the jurisdiction of the United States Court of Veterans Appeals, not the jurisdiction of this court. Moreover, the United States Supreme Court indicated that its holding was largely predicated on the "unique administrative scheme" of the nonadversarial veterans benefits program, which gives great deference and support to claimants. *Id.* at 1200–1201, 1204.

The plaintiffs also point to the United States Supreme Court's statement in *Tohono* that the "Court of Appeals was wrong to allow its precedent to suppress the statute's aims. Courts should not render statutes nugatory through construction." (quoting *United States v. Tohono O'Odham Nation*, 131 S.Ct. at 1729–30). Plaintiffs contend that *Tohono* made clear that the United States Court of Appeals in *Prati* should not have "ignored" the purpose of 26 U.S.C. § 6226(d) (1988) (repealed 1989) when it concluded that despite the statute's language, plaintiffs could have participated in the Tax Court proceedings. In *United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723, the United States Supreme Court ruled that under 28 U.S.C. § 1500 (2006) the United States Court of Federal Claims lacks jurisdiction when a plaintiff has a suit pending in another court and then files suit in the United States Court of Federal Claims based on substantially the same operative facts, regardless of the relief sought. *Id.* at 1731. There is no indication in *Prati* that the United States Court of

Appeals for the Federal Circuit was rendering 26 U.S.C. § 6226 nugatory through statutory construction. Rather, the *Prati* court determined that the 1997 amendment to 26 U.S.C. § 6226 "merely codified prior practice in the Tax Court." *Prati v. United States*, 603 F.3d at 1307 n. 4.

▮▮▮▮ *Res judicata* is an affirmative defense going to the merits of the case which, if properly asserted, bars the court from hearing the case. *See Case, Inc. v. United States*, 88 F.3d 1004 (Fed.Cir.1996) ("Turning to the merits, the doctrine of *res judicata* prevents a party from relitigating the same claims that were or could have been raised before.") (citations omitted). However, " ' "[j]urisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." ' " *Wolfchild v. United States*, 101 Fed.Cl. 54, 64–65 (quoting *Ultra–Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed.Cir.2003) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed.Cir.2002)) and citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)), *recons. denied*, 101 Fed.Cl. 92 (2011). Previous rulings of the Court of Federal Claims, in some instances, have determined jurisdictional grounds before addressing *res judicata* claims. *See, e.g., Vandesande v. United States*, 94 Fed.Cl. 624, 636 n. 8 (2010) ("Because the Court finds it lacks jurisdiction over Plaintiff's claim, it is not necessary to address Defendant's assertions of *res judicata* and collateral estoppel."), *rev'd on other grounds*, 673 F.3d 1342 (Fed.Cir.2012); *Simmons v. United States*, 71 Fed.Cl. 188, 189 ("Because the Court dismisses this case for lack of subject-matter jurisdiction, it does not address the Government's alternative motion for summary judgment, affirmative defenses, nor the merits of the Plaintiff's claims."), *appeal dismissed*, 189 Fed.Appx. 957 (Fed. Cir.2006); *Gustafson v. United States*, 27 Fed.Cl. 451, 452 n. 1 (1993) ("[B]ecause this court concludes that, in any event, it lacks

jurisdiction over the instant action, the court will not ask the parties to expend the additional resources required for further briefing [concerning a res judicata issue]. Hence, the court will dismiss plaintiffs' complaint for lack of jurisdiction and will not reach the res judicata issue."). As the Federal Circuit has indicated, "courts must always look to their jurisdiction, whether the parties raise the issue or not." *View Eng'g, Inc. v. Robotic Vision Sys. Inc.*, 115 F.3d 962, 963 (Fed.Cir. 1997).

Although the order of issues to be addressed is within the docket management discretion of the trial court, with respect to plaintiffs' *res judicata* argument, plaintiffs claims before this court would fail to meet the *res judicata* jurisdictional test. "Four elements must exist for a claim to be barred by *res judicata*: '(1) the parties [in both actions] are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.' " *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1361 (Fed.Cir.2010) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662, 164 L.Ed.2d 397 (2006)) (brackets in original).

▮▮▮▮ Plaintiffs contend that, as to their tax motivated interest claim, they were never bound to the partnership-level suits because the Tax Court's decisions were not final judgments on the merits and the same claims or causes of action were not involved.[13] Plaintiffs also assert that although "the Tax Court was a court of competent jurisdiction *to have made* determinations of the partnership-item elements of penalty interest ... it did not have competent jurisdiction to determine that plaintiffs' assessments were subject to penalty interest itself." (emphasis in original).

---

13. In their response to defendant's motion to dismiss, plaintiffs agree, however, that if § 6226(d)(1)(B) did not bar their participation in the partnership-level Tax Court suits, then they were treated as parties to the partnership-level suits, the parties to the actions at both the Tax Court and this court were the same, and the partnership-elements of Section 6621(c) penalty interest can be determined only at partnership-level Tax Court suits.

Contrary to plaintiffs' assertion that the same claims were not involved, a comparison of plaintiffs' complaints and the claims submitted to the Tax Court reveals that they are identical. *Compare* the *Kettle* Complaint 04–683T, paragraphs 12(A) and (E) ("The assessment of tax and interest was made after the statute of limitations had expired.... No portion of the underlying tax liability was attributable to any ... tax motivated transaction."), *and* the *Weidemann* Complaint 05–1384T, paragraphs 13(A) and (E) ("The alleged assessment of tax and interest was made after the statute of limitations for assessment had already expired ... no portion of the underlying tax liability was 'attributable' to any event defined in § 6621(c) ...."), *and* the *Ivy* Complaint 09–205T, paragraphs 12(A) and (F) ("The assessment of tax and interest was made after the statute of limitations had already expired ... no portion of the underlying tax liability was attributable to ... a tax motivated transaction."), *with* the statements in *Keener v. United States,* 551 F.3d at 1360 (at the Tax Court plaintiffs "claimed that the period for assessing tax attributable to the adjusted partnership items had expired prior to issuance of the FPAAs and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions").

Plaintiffs claim that based on *Duffie,* the final judgment "element of *res judicata* as applied to the above captioned plaintiffs for purposes of penalty interest is met only if the government can prove that the IRS and the TMP intended to agree that (i) the partnership transactions were 'shams' or otherwise 'tax motivated' for purposes of § 6621(c), *and* (ii) that the limited partners would not be allowed to challenge at the partner level whether their underpayments resulted from transactions previously determined to be 'tax motivated.'" (emphasis in original). Plaintiffs contend that because it was not their intent to be bound, the judgment was not final. The Fifth Circuit, however, found that the *Duffie* plaintiffs were bound, despite their assertion they did not intend to be, because "[o]nce a partnership-level suit is filed in the Tax Court, the TMP may enter into a settlement agreement with the IRS that is binding on all the other partners, notice and non notice, with respect to the determination of the partnership items in dispute." *Duffie v. United States,* 600 F.3d at 379 (citing T.C.R. 248(b)(1)(B), 251). Moreover, the Tax Court decision in *Duffie* also involved the AMCOR litigation. *See id.* at 364–65, 367–70. The IRS's motion for entry of decisions that prompted the Tax Court decisions stated "that all partners 'in each partnership whose partnership items are to be determined in the FPAA Cases and who meet the interest requirements of I.R.C. § 6226(d) are deemed parties to the partnership proceedings.'" *Duffie v. United States,* 600 F.3d at 369.

▪ Plaintiffs admit that the Kettles and Weidemanns entered into agreements with the IRS, and that the Ivys were assessed taxes and interest following the Tax Court decisions. Under 26 U.S.C. § 6224(c)(1), a settlement agreement with the IRS is binding. *See* 26 U.S.C. § 6224(c)(1). Furthermore, as noted in the United States Claims Court in *Prizer v. United States,* 11 Cl.Ct. 184, 187 (1986), decisions of the Tax Court, entered pursuant to a stipulation of the parties, can trigger the doctrine of *res judicata:*

> In *Erickson v. United States,* 309 F.2d 760, 159 Ct.Cl. 202, (1962), the predecessor Court of Claims there also held that: "[t]he Tax Court's jurisdiction, once it attaches, extends to the *entire subject of the correct tax for the particular year.* The cause of action then before the [Tax] Court encompass[es] all phases of the taxpayer's income tax for [the year in issue].... *That decision bars further litigation not only on those [issues] which were actually raised but also on the issues which could have been raised." Id.* at 767–68 (footnotes omitted; emphasis added). Erickson further emphasized that: "This conclusion is not affected by the fact that the Tax Court decision was entered on the basis of an agreement by the parties to compromise the case. Tax Court judgments resting on such stipulations are *res judicata* [in spite of the fact that it was entered by consent of the parties].... *Id.* at 768. *See also Maher v. United States,* 172 F.Supp. 689, 689–90, 145 Ct.Cl. 701 (1959);

*Cohen v. United States,* 2 Cl.Ct. 181 (1983); *Yamamoto v. United States,* 9 Cl.Ct. 207 (1985).

*Prizer v. United States,* 11 Cl.Ct. at 187 (emphasis in original); *see also Yamamoto v. United States,* 9 Cl.Ct. 207 (1985), *aff'd,* 795 F.2d 1018 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Cohen v. United States,* 2 Cl.Ct. 181 (1983), *aff'd,* 727 F.2d 1118 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984); *Hanover Bank v. United States,* 152 Ct.Cl. 391, 285 F.2d 455, 460 (1961) ("It should be observed at the outset that the fact that the Tax Court judgment was entered pursuant to the stipulation of the parties can in no way limit the operation of the doctrine of res judicata if it otherwise applies.") (citing *United States v. Int'l Bldg. Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), *reh'g denied,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); *Maher v. United States,* 172 F.Supp. 689, 145 Ct.Cl. 701 (1959)).

Plaintiffs also claim that the parties in both actions were not identical because plaintiffs were barred by 26 U.S.C. § 6226(d)(1)(B) (1988) from participating in the Tax Court proceedings. Section 6226(d)(1)(B), for the pre–1997 tax years, on its face, did bar their participation because it exempted certain partners from being treated as parties in Tax Court cases if the statute of limitations as to the partnership items on which taxes had been assessed, had expired. *See* 26 U.S.C. § 6226 (1988). According to plaintiffs, the 1997 amendment to 26 U.S.C. § 6226, permitting participation, only applied to tax years ending after August 5, 1997. In 1992, in *Columbia Building, Limited v. Commissioner,* 98 T.C. 607, 612 (1992), the Tax Court, however, stated:

> [t]he parties did not address the possibility that section 6226(d)(2) appears to proscribe the filing of a petition by a notice partner for the purpose of raising a statute of limitations defense. However, we have considered the application of section 6226(d)(2) to this case and conclude that it would not preclude petitioner from litigating a statute of limitations defense which is

applicable to ALL partners due to respondent's failure to issue a timely FPAA.

*Columbia Bldg., Ltd. v. Comm'r,* 98 T.C. at 612 (vacating denial of plaintiffs' motion for summary judgment and granting it where plaintiffs claimed FPAA was untimely issued). The Tax Court AMCOR cases were not decided until 2000 and the Tax Court stipulated decisions were issued in 2001, after the Tax Court's opinion in *Columbia Building, Limited v. Commissioner. See Prati v. United States,* 603 F.3d at 1302–03. It appears that the plaintiffs currently before this court could have intervened, but chose not to, at a point in the Tax Court proceedings after 1997, given that the tax matters partner for the AMCOR partnerships in the *Prati* case intervened in the Tax Court proceedings in 1999. *See Prati v. United States,* 81 Fed.Cl. at 426. According to plaintiffs, during the Tax Court proceedings, the IRS only would accept statute of limitations claims based on 26 U.S.C. § 6501(a), not § 6229 claims. (citing *Rhone–Poulenc Surfactants & Specialties, L.P. v. Comm'r,* 114 T.C. 533 (2000), *appeal dismissed,* 249 F.3d 175 (3d Cir. 2001)). Yet, plaintiffs state "that § 6229 is not a separate statute of limitations" and that "Plaintiffs here do not assert any provision of § 6229. They [the Plaintiffs] assert only § 6501(a)."

Furthermore, the United States Court of Appeals for the Federal Circuit in *Prati* dismissed plaintiffs' argument that they were barred:

> As for the appellants' argument that they were barred from participating in a proceeding to decide whether the statute of limitations had run because the statute of limitations had already run, that argument is circular and has no merit. As for their latter contention, the 1997 amendment merely codified prior practice in the Tax Court; the appellants, as individual partners, were therefore free to participate in the partnership-level proceedings to litigate the statute of limitations issue. *See Rhone–Poulenc Surfactants & Specialties, L.P. v. Comm'r,* 114 T.C. 533, 535, 2000 WL 863142 (2000) ("[W]e have held that a partner may participate in such action for the purpose of asserting that the period of

limitations for assessing any tax attributable to partnership items has expired and that we have jurisdiction to decide whether that assertion is correct."); *Columbia Bldg., Ltd. v. Comm'r*, 98 T.C. 607, 1992 WL 101165 (1992).

*Prati v. United States*, 603 F.3d at 1307, n. 4.

As part of their *res judicata* argument, plaintiffs also argue that the Tax Court was not a court of competent jurisdiction to hear the untimely assessment claim because the claim was a nonpartnership item. But as noted above, the Federal Circuit ruled in *Keener* and *Prati* that the statute of limitations claim is a partnership item, properly adjudicated at the partnership level. *See Prati v. United States*, 603 F.3d at 1307–08; *Keener v. United States*, 551 F.3d at 1367.

In sum, plaintiffs' assertion that *res judicata* is a threshold matter that must be determined prior to assessing jurisdiction is incorrect. Moreover, even if this court were to consider plaintiffs' *res judicata* claim, it would fail for the reasons discussed above.

## CONCLUSION

For the foregoing reasons, in the above captioned cases, this court does not have jurisdiction pursuant to 26 U.S.C. § 7422(h) to adjudicate plaintiffs' tax refund claims of untimely assessment and the inapplicability of tax motivated interest. Defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED.** Plaintiffs' claims and the above captioned cases are **DISMISSED.** The Clerk of the Court shall enter **JUDGMENTS** in Case Nos. 04–683T, 05–1384T, and 09–205T, consistent with this opinion.

**IT IS SO ORDERED.**